The attorneys that are going to orally argue on behalf of the parties, would you please come up to the podium? Those who are orally going to argue. The attorney for the appellant, would you please introduce yourself? Good morning your honors, Ryan Sullivan for the plaintiff appellant. Okay, and the appellee. Good morning your honors, John Ganella, G-O-N-L-E-L-L-A on behalf of defendant appellee. Okay gentlemen, thank you. Each of you will have a total of 15 minutes to argue. So, appellant, I've budgeted your time so that you have time remaining for your response. The microphone in front of you is a recording device only, it's not an amplifier. So if you want to make sure you're heard to everyone, please keep your voices up. Okay, we'll begin with the appellant, you may proceed. Good morning, may I please the court? My name is Ryan Sullivan, I'm appearing today on behalf of the plaintiff appellant, Demetrius Gozonis. I'm going to refer to you as the plaintiff. Today we're appealing a 2-6-19 motion that was granted in favor of the defendant appellee, who I'll refer to as the defendant, and a subsequent motion to vacate and reconsider. The motion, all motions were granted before we had a chance to conduct any discovery. The case was dismissed with prejudice, so there's not a lot of factual issues before the court today. In our exhibits, all we really have is a complaint in our exhibits, but I wanted to start by discussing the legal relationship between the parties. My client, the plaintiff, leased a commercial space to a tenant called Euro Cappuccino, I'm going to refer to them as the tenant. The defendant was the president and the operator of that tenant, at all times relevant. So he was the one in charge of running the tenant's business, which was a small cappuccino coffee store, it was like 1,000 square feet. So the original lease was entered into in 1999, it started in 2000, and it had a three-year term. The defendant, he signed that as the president of the tenant, and in order to actually execute the lease, the plaintiff required a personal guarantee from the defendant. Under the terms of that original lease, it could only be extended for another three years, correct? Correct. And so even if, arguably, the guarantee with that extension, how do you get the guarantee to stay in place all the way through to the end of the relationship? That seems to me to be the question. Because you have to look to the terms of the lease that that guarantee was guaranteed, correct? Correct. That's where you start. Correct. So the guarantee itself guaranteed all of the covenants of the lease. I don't think we have an issue there. During the term of that option period, there was a lease extension signed. But nothing in that original lease contemplated that possibility. I understand that you did sign what you called an extension, but is there anything in that original lease that contemplated that 2005 extension? No, there's not. So we're not arguing that there was an alteration to the lease. We're just saying that the guarantee continues to apply to the lease, because although it was altered, the term of it was extended. And in this lease extension, the defendant refers to it. He signed it again. He didn't sign it as a guarantor, but he signed it and referred to it as a lease and says that he's requesting that this lease be extended to December 31, 2010. Okay. But that extension, what was called an extension, was not secured in accordance with the original lease's terms. That's the problem. That's what I think you're running up against. I mean, that's the law, that the extension has to be secured in accordance with the terms of the lease that that guarantee was attached to. And nothing in that lease suggests you can enter an extension in 2005. I would respectfully disagree. One of the cases that we cited in our reply brief was Bank of Commerce v. Riverside Trails. Okay. And that's, I guess, my other question for you. That seems to me more of an estoppel case than anything else. That's saying the guarantor, i.e., the owner of EuroCampicino, knew about this, signed it, albeit in his corporate capacity. I mean, are you making an estoppel Riverside Trail kind of argument or not? We are asserting that. It's a two-part argument. We're asserting that as a matter of law, this guarantee applies to all periods that the tenant occupied the premises. And alternatively, if the court doesn't accept that, at least there's a question of fact as to whether the defendant consented to extending the guarantee to these additional periods. Where's the question of fact? Well, I think it starts with the lease extension where he explicitly agrees to extend the lease, refers to it as a lease. If it was supposed to be a new tenancy, you would think that he wouldn't sign something referring to a lease and extending it an additional five years. Secondly, the defendant remained in the premises until 2013. So the conduct itself shows that we haven't had an opportunity to pursue discovery, to see what had been said, what had been discussed between the parties. I don't understand what – I mean, this is a written document. What is it that is pretty unambiguous? You haven't cited an ambiguity. I'm confused where you think discovery is going. Well, again, going back to the Riverside Trail case, I think the court noted that there was a letter that the defendant sent acknowledging that they were still personally liable under the extension and the original note. So we have had no opportunity to see what the defendant said to the plaintiff in order for the plaintiff to agree to extend the lease and then allow them to continue to stay there in the month-to-month tenancy. Okay. So if there was conduct, if there was language from the defendant saying, yes, my guarantee, let me stay there, my guarantee is still in effect, then he would be stopped from serving those material alteration defenses. So we haven't had a chance to explore any of that. So you're suggesting that there could be some discovery that would suggest some oral agreement that contradicts the written agreement? Or written agreements. I mean, we don't have anything on file, but I'm not sure the defendant has, and I haven't had an opportunity to explore that. Okay. But you would be a party to any written agreement as the landlord. Correct. So you're suggesting that there's some agreement between the tenant and you that you would be a party to. Correct. And this was from 1999. I'm not saying that they have it or not, but I think we deserve the opportunity to explore that possibility. And I think the case law supports that. What case law? Well, just the fact that if there is something there, then if the defendant did agree to extend his guarantee, then that would entitle us to recovery. Yes. And you could have gotten a written agreement from him with a new guarantee, and then you would be entitled to recover. But what you got instead was a written lease extension that didn't include a guarantee. I mean, at least based on what's in the complaint. Well, I think the mere fact that the defendant is agreeing to extend the lease, which he guaranteed, the lease. He guaranteed the initial lease. Right. So he altered it. And number one, I don't think extending it an additional five years and having rent increases that mirror the rent increases in the original lease and option period, which were around 3% increases, are material alterations, which we argued in our brief. Okay. But, yeah, I think, and tell me if you think I'm wrong, but I think there's a difference between material alteration of an agreement that's still in place, which you argue this is not material, and then whether there is any agreement in place that has a guarantee attached to it. The only agreement that the guarantee was attached to was the original lease that expired in 2002 and then had a three-year extension. So there's just a similarity. So I don't understand how come the lease can't be extended. It has to be. In order for the guarantee to apply, then the extension has to be in accordance with the lease that he guaranteed. It has to be something contemplated by that lease or else the guarantee is gone. But then that's it. And it makes sense because the guarantee is only attached to that lease, and anything contemplated by that lease, the guarantee will follow. But once you get outside of the world of that lease, once that lease is gone, even if you call something an extension, it's just not contemplated by that lease. That's my problem. Well, going back to the Riverside trials case, the extension that they had in that note wasn't contemplated by the note. Right. And Riverside trials is really a different kind of theory. Riverside trials says, hey, you, you, the signatory of this note, you knew, you agreed to, you know, you're basically a stop to say that your guarantee is gone. It's really an estoppel case, I think. Well, I think that's what we have here because unlike Roth, unlike all the other guarantee cases where there's a third-party surety, this is the president and the person operating this 1,000-square-foot, this is the only person who knows this is being signed. Right, and I think that's what's troubling in this case from the, from their perspective is he knew. He's not some... There's no question. Right. And so that's, I mean, that's what we're, that's what we're asserting. And I think that's the difference between all these other guarantee cases out there. It's like the Roth case was a landlord, a tenant, and a third-party. Well, notwithstanding that, I can understand your position on that point. But notwithstanding that, we have tons of case laws strictly construing in favor of the guarantor only being held strictly to what he's expressly agreed to under the precise terms of the undertaking. Right, and I've read plenty of those cases, and they're all developed, but they make a lot of sense for situations where it's a third-party guarantor. Well, they're innocent of these extensions, and they don't know about it. We don't have that, so I think this is an interesting case. We don't have that here. We also have a long line of cases which you don't really address, along with the long line that Justice Harris just raised of saying that his capacity as president is different than his individual capacity. Correct, but that's what we have there. I think the most analogous case is the Riverside Trials case where the court specifically held that the defendants in that case couldn't reap the benefits of this note extension and additional credit and then hide behind these guarantor principles to escape liability, and that's what the defendant is doing in this case. The only reason that the plaintiffs allow him to lease it as a corporation was under the condition that there was going to be a personal guarantee. That was the understanding. The defendant had business reasons to set up a corporation to run his restaurant, and that's fine. The plaintiff only agreed to lease that with his guarantee, and there was countless discussions throughout the course of his tenancy where that was communicated and understood. We haven't had an opportunity to explore any of that. You want to reserve some time? I would like to. If you want to reserve at least five minutes, I think it's time to conclude. Okay. I'll conclude and let the defendant have his opportunity, and I'll come back. Thank you, Your Honor. Thank you. May it please the Court. My name is John Gamella. I represent the defendant at the lease, Giacomo Tamburello. There's no question that a guarantor is essentially in favor of the law. Guarantees are to be strictly construed in favor of the guarantor. That really only applies if there's some ambiguity. I mean, it's still a contract.  And in this case, there really was no ambiguity. The guarantee says, I, Giacomo Tamburello, guarantee the obligations of the tenant under said lease. There's nothing referring to any extension, anything else. Well, the lease itself does have one extension, but that is long gone. There's an option that was long gone, but that was never exercised. And I guess to get to Your Honor's point right away, this extension, what we're looking at here is a couple of things. First, the tenant is seeking rents not from the original lease, not from the month-to-month tenancy that was created immediately thereafter, not from the majority of the extension period, but rather the tail end of the extension period and the second month-to-month tenancy, the fourth tenancy that was created 11 years after the original lease. And those are the rents. Those are the damages they're seeking. Do you agree that if the guarantee had still been in place at the end of the last lease, the month-to-month tenancy, the guarantee would have followed through the month-to-month tenancy? No. I know you don't agree that it was the original lease or the extension. Let's just assume there was an explicit guarantee on the last extension. Then it would continue, would it not, into the month-to-month lease? Not necessarily. Not necessarily. There was a separate missing tenancy. There were four separate missing tenancies here. The original lease expired. They sort of went on their own then, didn't follow any holdover provisions, didn't really follow any general rule. They stayed there. They were allowed to stay there. Then they signed this lease extension, or they called it an extension, a document drafted by the plaintiff which did not require any sort of guarantee, which did not require any sort of additional signature or consideration, changed materially, changed the terms of the original lease, did not mirror even the option period or the month-to-month tenancy that they had entered into. Let me ask you what I think is the hard question in this case. What about the fact that it was the guarantor who actually signed the lease extension? Two responses to that. First, for business reasons, people set up corporations. They set up corporations to avoid personal liability. That was one of the main reasons people set up corporations, and that may or may not have been done here, but this corporation was originally brought into effect at the time of the original lease. That's why they required a guarantee. If we're going to throw corporate status and the holding of individuals versus corporations, we're going to throw that out the window. There's really no point to that. That's what they did in Riverside Apprails. That's what they did, but, again, it was an estoppel case. In this case here, we have, essentially, that was an immediate sort of an economic standard where it was an immediate subsequent tenancy, but we're not talking about that here. We are talking about a fourth tenancy, a fourth separate and distinct tenancy here. Is this the track that we're looking at where the landlord talks about having a theoretical continuing endless? Forever. It could go on forever under that theory. Where are we going to draw the line after a subsequent tenancy, a third tenancy, a fourth tenancy? Who does that advantage? I'm sorry? Who does that advantage? Obviously, that advantage is the guarantor, and that is in compliance with the law under guarantees. We strictly construe guarantees. We do not seek to extend them past the original terms of the guarantee, and certainly that following that logic, we are staying within that case law where we are strictly construing guarantees. We're not extending them out four, five, six tenancies down the road. That's why we have in the law a month-to-month tenancy which is created. It is a separate and distinct tenancy. People enter into a lease. The lease expires. A separate and distinct month-to-month tenancy is created by effective law. In this case, that's what happened after the original lease expired. They signed an extension. They called it an extension, but it was essentially a new agreement. It was essentially a new tenancy. Perhaps you want to call it a new lease. I understand that they called it, but the term … Do you believe it's a new lease? I believe it was a new tenancy. I don't think it was something that … Is it an extension of a tenancy? Of what tenancy? Going back to the original? So the tenancy is skipping in between? The feeling we're getting here is riding the coattails of the tenancy in front of you. It progresses, and it's something that could be a permanent whiff, I guess. Essentially, but the plaintiff in signing the new extension couldn't easily put in a new guarantee or the same guarantee, saying if we're going to sign this extension or this new document, you've got to guarantee it again. And he didn't do that. The plaintiff drafted it. Any discussions would be full of evidence. Any written documents that the plaintiff would be a party to, he would have in his possession. Is it clear in the record that the plaintiff drafted it, or are you just saying that? Is that clear in the record somewhere? I believe it's in the brief. They prepared it. Perhaps it's not in the record. It was dismissed on a motion to dismiss. That's correct. If it's not, it would be in one of the things in the trial court. I just, I don't recall that being aware of that. In either case, Robert, I could have simply put in a new guarantee. The plaintiff, had the defendant drafted it, the plaintiff would have said, no, I don't want a personal guarantee. I don't think that's determined. Again, perhaps there's an issue. 215. 215, 615. Yeah. The 2615 motion is dismissed. I believe so. 619. 619. 619. I'm sorry. So, again, what we could have is possibly extending this far down the line. And what we had, again, was four separate tenancies. Any extension period was different. The terms of this extension were almost twice the term of the original lease. The rent increase was different both from the original lease and the option contemplated by the lease. And when that was changed, essentially, the guarantee was disallowed. I mean, this was an entirely, this was years later, this was an entirely new economic circumstance, and it bound the guarantor to a lot more than he was originally bound to. And after that expired, they changed the terms once again. They stayed there. The rent changed again. The terms changed again. It became a month-long tenancy on completely different terms all over again for the fourth time. And ultimately what happened is that they got less and less money and their businesses faltered. Possibly because of the economic circumstances that they were bound to and it's this time period that they were bound to. I mean, certainly it's not a small sum of money that plaintiff is seeking, but there was any time period after the first date that they certainly could have tended to five-day notice and filed for eviction. Well, those were filed too. I'm sorry? Evictions were, there were people, there were evictions as well. Correct, correct. So based on the law regarding guarantees, this guarantee was clear and unambiguous. It said, I guarantee the obligations under this lease. I think you were going to give a second reason as to why Riverside Trails and the Escobar argument didn't apply and I'm not sure you got to it. Well, the second reason was essentially, the first one was the corporate status. The second one was essentially, which I said was, if we're looking at, I could understand when that argument would apply, would this be an immediately subsequent tenancy. But we don't have that here. What we have is essentially four tenancies. We have the original lease. We have three years of month-to-month after that. We have a five-year extension in quotes. And then we have two and a half more years of month-to-month tenancy. I'm sorry, go ahead. As Justice Simon said, how far off are we going to hold these guarantors liable? That flies in the face of strictly construing guarantees, as we've so often done in Illinois. Based on those arguments, we would ask that you find in favor of the defendant, Appellee Giacomo Tamparello. Thank you, counsel. Appellate, your response or reply? Good morning, Ryan Sullivan again for the appellate. You have six minutes. Okay. I wanted to just touch on a few things that the counsel for the appellee touched on. First, with regard to multiple tenancies, I think that's looking at this in a legal vacuum. This is one tenant who remained in the premises for the entire 12- to 13-year period. I don't know how we turned that into four different tenants. It's one lease. I think there's common sense. That's one lease. They never left. As we allege in the complaint, the rent steadily increased at 3% all the way. The last option rental period was $1,426. Then this lease extension, it went up to $1,483. So the appellee contends that he was basically staying there on whatever terms he wanted, and he honestly agrees with the court. The record indicates otherwise. And then in the Roth case, they specifically hold that a once-a-month tenancy is a continuation of the lease. It's not a new tenancy. It's a continuation of the lease. That's a specific holding in that case. Did Peterson and Londale have any influence on this? I'm not sure which was cited in the appellee's brief. Your side. You stare at this. Yes, I don't have an answer to that. Okay. That's fine, counsel. As far as the tenancy continuing endlessly, the only way that's going to happen is if the tenant stays in the property. If it's a month-to-month tenancy, no one's forcing them to stay there and not pay rent. So what we haven't done in discovery is figure out what was the defendant saying to the plaintiff to stay on the property. He first breached rent in February of 2010, yet he didn't leave until 2013 when we had to file an eviction to get him out of there. So, no, it didn't have to continue on and hold this innocent guarantor endlessly liable for this business that he was operating. He was staying there. He decided not to pay rent. That was on him. No one forced him to stay there. In fact, we had to force him to leave by filing an eviction. So I think there's not a direct case in Illinois law on point that corresponds with the facts of this particular case. I think it's a unique circumstance that the defendant guarantor was also the operator of the business. I think that has to play into it. And like we alleged in our brief, we feel that this court should hold as a matter of law.   And secondly, if the court doesn't agree with the lease, the whole guarantee applies to the whole lease that extended the whole time. And secondly, if the court doesn't agree with that, at a minimum, there should be a factual issue as to whether, by the either conduct or words of the defendant, he assented to continuing his guarantee during the entire tenancy of the tenant. Thank you, counsel. Thank you, counsel. Thank you to both counsels. Thank you.